IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| KEVIN BARNES, | § | |
| TDCJ-CID # 1063303, | § | |
| and | § | |
| KENNETH MOLETT, | § | |
| TDCJ-CID # 629054, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-05-014 |
| | § | |
| BILL PIERCE, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This civil rights suit, filed by inmates Kevin Barnes and Kenneth Molett, concerns allegations that  officials of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), have violated Barnes and Kenneth Molett's rights to practice their Muslim religion. The court ordered service on the defendants through the Texas Attorney General's Office. Defendants Warden Brad Casal, Chaplain Bill Pierce, Chaplain Omar Shakir, and Major Carol Monroe have filed a Motion for Summary Judgment (Docket Entry No. 57) supported by affidavits and records.  After reviewing the pleadings and evidence, the court has determined that the motion (Docket Entry No. 57) shall be granted and that this action shall be dismissed.

### I. Procedural History and Claims

Barnes, an avowed Muslim, originally filed this suit raising numerous claims that TDCJ-CID officials unlawfully interfered with his right to practice his religion.  The court ordered Barnes to answer specific questions regarding his religious practices and how the defendants allegedly hindered them.  After reviewing Barnes's response, the court dismissed his claim that he was denied

the right to wear a beard because TDCJ-CID's grooming policy has been upheld by the courts. *See*

*Green v. Polunsky*, 229 F.3d 486, 488 (5ᵗʰ Cir. 2000).  However, the court retained Barnes's claim

concerning unequal access to religious services.  Specifically, Barnes argued that Muslim prisoners

are not allowed the same opportunities available to prisoners of other faiths.  He alleged that he was

prevented from attending Muslim services due to his classification although he did have access to

non-religious activities and that services were available for members of other faiths.  Barnes further

complained that Muslims are not allowed to pray quietly in the day rooms or engage in religious

activities while they are in other prisoners' cells.

Liberally construing the pleadings, the court found that Barnes had alleged a violation of his

rights under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and

Institutionalized Persons Act (RLUIPA).  42 U.S.C. §  2000cc-1(a).  The court also allowed

Kenneth Molett to join in this action because his allegations and arguments are essentially the same

as those of Barnes.

## II. <u>Summary of the Arguments and Evidence</u>

Defendants Casal, Pierce, Shakir, and Monroe argue that they are entitled to qualified

immunity because the plaintiffs have not sufficiently alleged personal involvement under 42 U.S.C.

§ 1983. They contend that the plaintiffs have only asserted a complaint about a policy which places

restrictions on medium custody inmates which prevents them from attending Taleem prayer.  The

defendants also point out that only Monroe has been named as the individual who allegedly

implemented the policy.  Casal, Pierce, and Shakir were named as defendants only because of their

supervisory roles and because they sometimes review inmate grievances.  The plaintiffs complain

that they were disciplined for praying in the day room, but do not specify that any of the named

individuals were personally involved in the actions taken against them in violation of their right to

practice their religion.

The defendants assert that the challenged policy which restricts the plaintiffs' activities, including their ability to attend certain services, is not a violation of federal or constitutional law because it is reasonably related to a legitimate penological interest in accordance with the law established under the First Amendment. They further assert that the restrictions are in compliance with the RLUIPA standard because the restrictions were instituted to maintain security and discipline within the prison.  The defendants have submitted the following evidence, attached to their Motion for Summary Judgment (Docket Entry No. 57), in support of their arguments:

Exhibit A:     Affidavit of Brad Casal

Exhibit B:     Affidavit of Carol Eugene Monroe

Exhibit C:     Texas Department of Criminal Justice, Administrative Directive 3.70, "Cell Restriction for General Population Offenders"

The plaintiffs have been assigned to medium custody.  Exhibit A, at 2. Inmates who are classified as medium custody offenders are considered to pose a greater threat to institutional security than inmates in general population.  Exhibit A, at 3.  Religious services allows inmates to congregate and presents them opportunities to engage in gang activities, drug trafficking, fighting and other potentially dangerous or disruptive behavior.  *Id.*; Exhibit B, at 2.  Further, extra security personnel are required to monitor religious services, and therefore, inmates from different custody levels cannot be allowed to mix which would add to the security burden.  Exhibit B, at 2.  Providing additional religious services is not a viable option due to  the limited number of security personnel as well as religious volunteers.  Exhibit B, at 2.  Consequently, medium custody prisoners at the Stevenson Unit were allowed to attend only one primary religious service each week regardless of their religious affiliation.  Exhibit A, at 3.  In doing so, the prisoners can observe their religion

without unreasonably compromising the prison's security needs. *Id.*   With regard to Muslim prisoners, Jumah prayer services, which are held on Fridays, are the primary religious services for that denomination. Exhibit A, at 2. Taleem is more akin to a Koranic or religious text study class, and is distinguished from a primary religious service. *Id. See also Garner v. Morales*, No. C-06-218, 2007 WL 2688501, at \*11 (S.D. Tex. Sept. 12, 2007) (Taleem defined as "Koranic study sessions"). The defendants contend that allowing the plaintiffs to attend Jumah services is a sufficient accommodation such that their ability to practice their religion is not substantially burdened. In addition, the defendants point out that the plaintiffs are allowed to "worship in their cells and to possess holy books, prayer beads, kufi caps, and other approved religious items." Exhibit A, at 2. In response, the plaintiffs argue that they need to attend Taleem because their Muslim religion commands that they "teach the believers." Docket Entry No. 65, at 12.

The defendants contest the allegations that plaintiffs have been denied the ability to hold group prayers in the day room and assert that the plaintiffs have not presented any evidence showing that they have been disciplined for praying in the day room. The defendants also contend that the accommodations mentioned above are sufficient to permit the plaintiffs and other Muslim inmates to practice the fundamental tenets of their religion.

The defendants argue that the plaintiffs' Equal Protection claims are wholly conclusory in that the policies are applied to all medium custody inmates regardless of their religion. Exhibit A, at 3. The plaintiffs counter that they are not allowed the same opportunities as Christian inmates. *See* Docket Entry No. 65, at 15. In support of this argument, they assert that they are allowed to attend Sunday Christian services but not Wednesday Taleem services. *Id.* They further complain that all medium custody inmates are permitted to attend Kairos Christian services but only those who are Muslim may attend Taleem services. *Id.* However, there is no dispute that the plaintiffs are able

to practice their religion within the limits prescribed by the prison although the plaintiffs are dissatisfied with the extent they are able to do so.  Moreover, the defendants assert that policies and practices are based on security concerns and that there is no indication that the plaintiffs have been treated differently based on their religious beliefs.

The defendants contend that the plaintiffs are not entitled to damages under the First Amendment because they have failed to show how they were physically harmed by the alleged violations.  The defendants further contend that RLUIPA does not provide for monetary damages and that there is no express or implied right of action under RLUIPA against the named individuals. In addition, the defendants assert that they are entitled to qualified immunity regarding claims against them in their individual capacities because the plaintiffs have failed to state a claim of constitutional dimension.  They argue that there are no cases holding that TDCJ-CID's religious accommodation  policies are unconstitutional or that the defendants violated clearly established statutory or constitutional law.   Finally, the defendants assert that they cannot be held liable for damages in their official capacities because they are immune under the Eleventh Amendment.

## II. <u>Summary Judgment Standards</u>

In deciding a motion for summary judgment, the Court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue.  *Kee v. City of Rowlett, Tex*., 247 F.3d 206, 210 (5th Cir. 2001).  To meet this burden, the movant must present evidence that shows that the nonmovant cannot carry its burden

5

of proof at trial.  *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998).   The movant may accomplish this by showing that the non-moving party has presented  no evidence in support of his claim.  *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).   Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant.  *Id.*

The court construes the evidence such that the non-moving party is favored and does not weigh the evidence, assess its probative value, or resolve any factual disputes.  *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).  However, the nonmovant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996).  Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth.  *Fiesel v. Cherry*, 294 F.3d 664, 667 (5th Cir. 2002); *Spectators' Communication Network Inc. v. Colonial Country Club*, 253 F.3d 215, 219 (5th Cir. 2001).  Factual controversies will be decided in the nonmovant's favor only when both sides have presented evidence showing that there is an actual controversy.  *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998), *citing Little*, 37 F.3d. at 1075.  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Id*.

## III. Analysis

Under the First Amendment, prisoners have a right to reasonable opportunities to practice their religious beliefs.  *Cruz v. Beto*, 92 S.Ct. 1079, 1081 n.2 (1972).  However, this right may be limited by the prison authorities in furtherance of legitimate and necessary penological goals. *Turner v. Safley*, 107 S.Ct. 2254, 2261-62 (1987); *O'Lone v. Estate of Shabazz*, 107 S.Ct. 2400, 2405

(1987). It is well established that "a prison inmate retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 94 S.Ct. 2800, 2804 (1974); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).    Prison officials can implement policies that interfere with an inmate's religious practices if such policies are based on legitimate concerns about security. *Green v. Polunsky*, 229 F.3d 486, 489 (5th Cir. 2000).

With regard to the RLUIPA, the court must determine whether the defendants have imposed a "substantial burden" on a prisoner's religious practices and whether the officials have used the "least restrictive means" to impose this burden in order to meet a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2). The plaintiffs must prove that the complained of actions created a "substantial burden" on their religious practices by showing that the actions either (1) influenced the plaintiffs to act in a way that violated their religious beliefs, or (2) forced them to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following their religious beliefs. *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir 2004). It is undisputed that "prison security is a compelling state interest." *Cutter v. Wilkinson*, 125 S. Ct. 2113, 2124 n.13 (2005). *See also Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007). When considering a prisoner's RLUIPA claim, the court accords "due deference to prison administrator's experience and expertise." *Cutter*, 125 S. Ct. at 2119. "[The courts] do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." *Id*. at 2122. *See also Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) ("RLUIPA, in other words, is not meant to elevate accommodation of religious observances over the institutional need to maintain good order, security, and discipline or to control costs."). The court considers the arguments and evidence in light of the above standards.

A. <u>Medium Custody and Cell Restriction- Limited Access to Religious Activities</u>

The plaintiffs complain that as medium custody inmates they are not allowed to attend Taleem services on Wednesdays although they are able to attend Jumah, which is the primary weekly Islamic prayer service. The defendants do not dispute that there was a policy limiting the plaintiffs to only one service per week but they contend that this does not substantially burden the plaintiffs' ability to practice their religion. *See* Docket Entry No. 57, at 11. In addition to their weekly services, the plaintiffs are permitted to practice their religion by worshiping in their cells and by possessing and using religious items such as holy books, prayer beads, and kufi caps. *Id.* The plaintiffs also complain that they are not allowed to attend any services when they are placed in cell restriction. The defendants respond that cell restriction is a punitive measure imposed on inmates who have violated TDCJ-CID rules and regulations. They also point out that cell restriction does not last more than 30 or 45 days and that inmates may still worship and study their holy books while they are confined to their cells.

Although plaintiffs have a right to practice their religion, it is clear that these rights are limited by the fact that they are in TDCJ-CID's custody and are subject to its rules which are necessary due to the size and nature of its inmate population. *See Cutter*, 125 S. Ct. at 2122. In any large organization such as a prison or a military service, individual members do not enjoy the same autonomy as civilians do in an open community. *Id.*, *citing Goldman v. Weinberger*, 106 S. Ct. 1310 (1986).

The plaintiffs' complaint that they are not allowed to attend all religious functions is not supported by any evidence that they have been pressured to significantly modify their religious behavior. The plaintiffs' broad assertion that their religion requires them to teach or instruct their

fellow adherents does not address the fact that they do have some contact with other Muslim inmates. The plaintiffs have been allowed to attend services on a weekly basis and they do not have a right to attend every religious service that might enhance their religious lives. *See Baranowski*, 486 F.3d 124-25 (substantial burden was not placed on prison inmates who were not allowed to meet on a weekly basis due to staff limitations); *Adkins*, 393 F.3d at 571 (inability of inmates to assemble on every Sabbath and holy day did not "substantially burden" practice of their religion in violation of RLUIPA). Moreover, it has been established that the plaintiffs, like all Muslim inmates, are permitted to participate in Ramadan activities, clean and shower before prayer services, keep devotional items, and keep religious literature which they can study in their cells. *See Gooden v. Crain*, 405 F.Supp.2d 714, 720 (E.D. Tex. 2005). The plaintiffs have not shown that they were substantially burdened by the exclusion from a study group when they still had the ability to read the Koran on their own. *See Kaughman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (prison did not violate Free Exercise Clause by refusing to allow atheist inmate to study with other inmates).

Further, the defendants have demonstrated that the decision to exclude the plaintiffs from Taleem sessions was rationally related to their security concerns. *See Kaufman*, 419 F.3d at 483. The plaintiffs were classified as medium custody inmates at the time of their exclusion. Exhibit A, at 2. Such inmates are considered to pose a larger threat to institutional security and the restriction was imposed to address the threat. *Id*.; Exhibit B, at 2. Prisons are faced with limited resources and must balance the demands of prisoners with the ability to answer them. *Mumin v. Phelps*, 857 F.2d 1055 (5th Cir. 1988) (prison was justified in its refusal to transport Muslim inmates from various units for weekly services). Prison officials can implement policies that interfere with an inmate's religious practices if such policies are based on legitimate concerns about security. *Green v. Polunsky*, 229 F.3d 486, 489 (5th Cir. 2000); *see also Hill v. Epps*, 202 Fed. Appx. 785, 786 (5th Cir.

2006), *citing Hicks v. Garner*, 69 F.3d 22, 25 (5ᵗʰ Cir. 1995).  With regard to inmates who are under

cell  restriction due to disciplinary violations, they can be banned from attending any services or

religious group activities due to the increased security challenges presented as well as the need to

impose punitive measures on inmates who refuse to conform to institutional standards.  *See Wilson*

*v. Budney*, 976 F.2d 957 (5ᵗʰ Cir. 1992).  *See also Muhammad v. City of New York Dept. of*

*Corrections*, 904 F.Supp. 161 (S.D.N.Y. 1995) (reasonable curtailment of right to attend services

is permissible where it is necessary for prison's 'discipline and management of the institution')

*dismissed as moot  Muhammad v. City of New York Dept. of Corrections*, 126 F.3d 119 (2ⁿᵈ Cir.

1997).

        B. Equal Protection

        The plaintiffs complain that their rights have been violated due to unequal access to religious

services.  They specifically allege that their medium custody classification prevented them from

attending Muslim services; however, they still had access to services that were available for

Christian inmates.  To succeed on their Equal Protection claim, the plaintiffs "must prove purposeful

discrimination resulting in a discriminatory effect among persons similarly situated."*Adkins v.*

*Kaspar*, 393 F.3d at 566, *quoting Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5ᵗʰ Cir. 1992), *citing*

*McClesky v. Kemp*, 107 S. Ct. 1756 (1987).  The Fourteenth Amendment does not require that every

sect receive the same facilities and opportunities regardless of size.  *Id*., *citing Freeman v. Texas*

*Department of Criminal Justice*, 369 F.3d 854, 862-53 (5ᵗʰ Cir. 2004).  *See also Baranowski*, 486

F.3d 112. The defendants have shown that the complained of restrictions were made necessary by

the security needs of the prison.  The plaintiffs fail to prove their Equal Protection claim because

there is no evidence that the prison officials have engaged in purposeful discrimination which has

resulted in disparate treatment among persons in similar circumstances.  *Freeman*, 369 F.3d at 862,

10

*citing Muhammad*, 966 F.2d at 903.  Moreover, there is no constitutional requirement that prison

officials  provide the same support, personnel, and resources to every religious sect regardless of

size.  *Id. citing Cruz v. Beto*, 92 S.Ct. 1079, 1081 n. 2 (1972).

The court also notes that the evidence indicates that defendants Casal, Pierce, and Shakir

were not personally involved in the decision to limit the access of medium custody and cell

restricted inmates to religious services.  Consequently, they may not be held liable.  *Anderson v.*

*Pasadena Independent School Dist.*, 184 F.3d 439, 443 (5th Cir. 1999).  Further, the plaintiffs have

failed to show that the policy violated their rights.  *Grandstaff v. City of Borger*, 767 F.2d 161, 169

(5th Cir. 1985).  Therefore, the defendants' Motion for Summary Judgment (Docket Entry No. 57)

shall be granted and this action shall be dismissed with regard to all claims.  *Lewis v. Lynn*, 236 F.3d

766, 768 (5th Cir. 2001) (defendants who did not join in successful summary judgment motion filed

by current officials also named as defendants, were nevertheless entitled to benefit of summary

judgment).

## IV. **Plaintiffs' Motion to Amend**

The plaintiffs filed a Motion to Add Claims (Docket Entry No. 64) more than two months

after the defendants submitted their Motion for Summary Judgment.  They seek to add an additional

claim against Chaplain Omar Shakir by alleging that he forced inmates to attend Jumah in order to

receive accommodations during the month of Ramadan.  They also attempt to assert that the

defendants' policy violates the Establishment Clause by denying access to Islamic services while

allowing access to Christian services.  The first claim appears incongruous since the plaintiffs have

asserted the importance of attending religious services.  It would be logically inconsistent to contend

that a Muslim cleric was violating a Muslim inmate's religious practices by compelling him to attend

a service which has been mandated by the inmate's chosen religion.  The second argument has been

11

addressed and rejected in this Memorandum Opinion and Order.  Moreover, the motion to amend

was filed well after the defendants had answered the complaint and had filed a dispositive motion

addressing the plaintiffs' complaint.  The plaintiffs' motion shall be denied as futile and untimely.

*Stripling v. Jordan Production Co.*, LLC. 234 F.3d 863, 872 (5th Cir. 2000); *Briddle v. Scott*, 63 F.3d

364, 379 (5th Cir. 1995).

## V. Conclusion

The court **ORDERS** the following

1.      The plaintiffs' Motion to Amend (Docket Entry No. 64) is **DENIED**.

2.      The defendants' Motion for Summary Judgment (Docket Entry No. 57) is **GRANTED**.

3.      This action is **DISMISSED** with prejudice.  FED. R. CIV. P. 56(c).

**SIGNED** on this 5th day of March, 2008.



_____
                    JOHN D. RAINEY
          UNITED STATES DISTRICT JUDGE