IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| KEVIN BARNES, | § | |
| TDCJ-CID # 1063303, | § | |
| and | § | |
| KENNETH MOLETT, | § | |
| TDCJ-CID # 629054, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-05-014 |
| | § | |
| BILL PIERCE, et al., | § | |
| | § | |
| Defendants. | § | |

# **ORDER**

This prisoner civil rights action was dismissed pursuant to the court's granting of the defendants' motion for summary judgment. One of the plaintiffs, Kevin Barnes, has filed a Motion to Alter or Amend Judgment Pursuant to Rule 59(e). The motion (Docket Entry No. 73) shall be **DENIED** for the reasons set forth below.

The plaintiffs, TDCJ-CID inmates, claimed that TDCJ-CID officials violated their right to practice their Muslim religion by not allowing them the same opportunities available to prisoners of other faiths.[1] Barnes alleged that his medium custody classification prevented him from attending some Muslim religious services while still allowing him to engage in other activities including services for non-Muslim religions. Barnes also alleged that TDCJ-CID officials prevented him from praying quietly in the day rooms or engaging in religious activities while in other prisoners' cells.

---

[1] There was also a complaint that TDCJ-CID prohibited Muslims from wearing beards; however, this claim was dismissed as having no legal basis. *See Green v. Polunsky*, 229 F.3d 486, 488 (5th Cir. 2000).

The defendants submitted evidence showing that the complained of restrictions were reasonably related to a penological interest in that they were instituted to maintain security and discipline. *See* Docket Entry No. 57. They demonstrated that medium security inmates such as Barnes were allowed to attend one primary religious service per week, regardless of their faith. This was necessary because of the heightened security requirements presented by medium custody inmates who are considered a greater safety risk than those assigned to general population. Jumah, the primary Muslim religious service held on Friday, is available to inmates in medium custody. Although medium custody inmates cannot attend Taleem, Koranic group study sessions held each Wednesday, they are allowed to practice their religion and study the Koran, in their individual cells. The primary purpose of the restrictions is to prevent medium custody inmates from engaging in violent or subversive activities. Limiting their opportunities to gather and congregate helps achieve this goal.

After considering all evidence, including exhibits submitted by the plaintiffs (Docket Entry No. 66), the court found that the defendants had shown that there was a legitimate need to limit medium custody inmates from engaging with other inmates and that allowing Muslim inmates to attend Jumah and study the Koran in their cells was a reasonable accommodation of their religious beliefs and practices. *See* Docket Entry No. 71.

Barnes contends that the court did not consider the exhibits he submitted in response to the defendants' motion for summary judgment. The plaintiffs' evidence included grievances submitted by other inmates who had difficulty attending religious services due to custody classifications and cell restrictions. *See* Docket Entry No. 66, Exhibit A. The grievances merely show that some inmates were prevented from engaging in some religious activities due to security restrictions.

Barnes also submitted a document showing that at one time he was assigned to general population. Docket Entry No. 66, Exhibit B. The court previously noted in its Memorandum Opinion and Order (Docket Entry No. 71 at 8) that cell restriction assignments are temporary and do not last more than 45 days. Moreover, inmates may be prevented from attending services if they present a potential risk of disruption. *See Wilson v. Budney*, 976 F.2d 957 (5th Cir. 1992). Barnes submitted a grievance (Docket Entry No. 66, Exhibit C) in which he complained that he was forced to attend Jumah services in order to participate in Ramadan activities. The court previously rejected this complaint as incongruous with Barnes's claim that he was not allowed to attend Muslim religious services. *See* Docket Entry No. 71 at 11.

Barnes refers to a grievance (Docket Entry No. 66, Exhibit F) which he asserts to support his argument that Taleem is a religious service for purposes of the RLUIPA. On the contrary, Taleem is considered Koranic study. *Id*. at 4. The court previously upheld the prison's decision to restrict medium custody inmates from participating in study groups while allowing the inmates to study religious works on their own. Docket Entry No. 71 at 9, *citing Kaughman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). Another grievance filed by a different inmate (Docket Entry No. 66, Exhibit O) is also unpersuasive in establishing Taleem as a religious service similar to Jumah.

The plaintiffs submitted a disciplinary report (Docket Entry No. 66, Exhibit E) indicating that Molett was punished for attending Jumah services while on cell restriction while an inmate of another faith was not punished. Included is a disciplinary report in which an inmate who was a Jehovah's witness was similarly disciplined but successfully appealed the case due to "discrepancies" at that time. *See id*. at 2. However, the Jehovah's witness was warned that he would be held accountable if he were caught again. There is no indication that Molett made any

3

attempt to appeal the disciplinary action taken against him or that the Jehovah's witness's punishment was not overturned due to lack of evidence against him or some other ground which warranted setting aside the disciplinary action without regard to religious preference. The plaintiffs failed to show that the disciplinary action against Molett was discriminatory or interfered with his right to observe his Muslim beliefs.

The plaintiffs presented a grievance (Docket Entry No. 66, Exhibit F) which they contend shows that medium custody inmates were prevented from attending Muslim services but allowed access to services for other faiths. The grievance indicates that all medium custody inmates are entitled to attend one service of their choice per week. *Id.* at 10. The plaintiffs misrepresent the response from the Chaplaincy Department which states, "Medium custody offenders will be allowed any and all class periods of their choice when they attain the status of Minimum Custody, which should be their goal." There is no showing that Muslim inmates are denied access to services that are available to members of other faiths to the extent that Barnes's rights were violated under the Constitution or RLUIPA.

The plaintiffs presented grievances and an affidavit (Docket Entry No. 66, Exhibits G and R) which are supposed to show that the policy of separation of medium and minimum custody inmates during religious services was not implemented until after the suit was filed. The grievance, which concerns a Jehovah's Witness inmate does not prove any claim asserted in the complaint and does not indicate that the prison officials segregated the inmates for retaliatory purposes. *See Enlow v. Tishomingo County, Miss.*, 45 F.3d 885, 889 (5th Cir. 1995) ("[S]equence of events, by itself, does not amount to a reasonable inference of retaliatory intent." Moreover, the lay-in passes and schedules (Docket Entry No. 66, Exhibits M and N) which purportedly show that medium and

4

minimum custody inmates were allowed to attend services together has no probative value regarding the plaintiffs' claims that they were unreasonably denied opportunities to practice their faith.

The plaintiffs also submitted grievances (Docket Entry No. 66, Exhibit H) which they contend show that medium and minimum custody inmates are allowed to attend and participate in non-religious activities such as field squad assignments and legal research. Such comparisons do not indicate that the prison officials unreasonably restricted Muslim inmates from practicing their religion. Prison guards can monitor inmates while they are working or engaged in legal research; however, the private and personal nature of religious services and rituals requires that guards maintain some distance which creates more opportunities for criminal and dangerous behavior. *See e.g. Hamilton v. Schriro*, 74 F.3d 1545, 1551 (8th Cir. 1996).

The plaintiffs' evidence which purportedly shows that some inmates were issued lay-ins to attend Taleem (Docket Entry No. 66, Exhibit I) does not support any finding other than prison officials did allow inmates to participate in such activities. Moreover, the lay-ins (Docket Entry No. 66, Exhibit K) which purportedly show that medium custody inmates were allowed to attend Muslim services defeats the plaintiffs' argument that the prison officials were denying Muslim inmates the right to practice their religion. The handwritten memorandum (Docket Entry No. 66, Exhibit J) in which a Christian medium custody inmate is allowed to attend a service has no relevance to the complaint concerning medium custody inmates being restricted from participating in a study group such as Taleem. Even less relevant are the short article concerning public opinion on separation of church and state (Docket Entry No. 66, Exhibit L), the case summary (Docket Entry No. 66, Exhibit S), and the Religious Practice Issue Assessment Form (Docket Entry No. 66, Exhibit Q) which provide no facts regarding the issues.

Mollet filed grievances (Docket Entry No. 66, Exhibit T) in which he complained that while Christian services are open to prisoners from all faiths Muslim services are restricted only to those whose religious preference is Muslim. The response from the Director of the Chaplaincy Department was that this policy was consistent with the tenets of the Muslim faith. *Id.* at 4. Regardless of the prohibitions against non-Muslims from attending Jumah, the grievances provide no evidence that either plaintiff was denied the right to practice his religion. *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995), *citing Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1989) (plaintiff asserting a civil rights violation must show that he was personally harmed by the defendants' acts or omissions). Similarly, an unsuccessful request from an apparent non-Muslim (Docket Entry No. 66, Exhibit V) does not indicate that the plaintiffs were prevented from observing their core religious practices.

The copy of Molett's Motion for Preliminary Injunction (Docket Entry No. 66, Exhibit U) was filed in another action which was dismissed pursuant to Molett's motion. *Mollett* [sic] *v. Pierce*, No. V-04-077 (S.D. Tex. Jan. 12, 2005). The motion had been previously denied and provides no probative evidence in this proceeding. In summary, the plaintiffs' exhibits were considered and were found to have presented no evidence which presented any genuine issue regarding this court's prior determination that the defendants were entitled to summary judgment.

Barnes also contends in his Motion to Alter and Amend that the court failed to determine if the defendants would have suffered harm by allowing him to amend his complaint. *See* Docket Entry No. 73 at 2. As noted in the Memorandum Opinion and Order in which the court previously denied the plaintiffs leave to amend (Docket Entry No. 71 at 11), the plaintiffs had filed a Motion to Add Claims (Docket Entry No. 64) more than two months after the defendants had submitted their

Motion for Summary Judgment.  Moreover, the Motion to Amend was filed more than two and one-half years after the commencement of this action and discovery had been completed.  Allowing the plaintiffs to amend their claims at such a late stage would have necessitated more discovery and postponed the resolution of the proceedings to the defendants' detriment.  *See Harris v. BASF Corp.*, 81 Fed.Appx. 495, 496 (5th Cir. 2003).  Therefore, the court rejects the late motion to amend.  *Id.*

The court **ORDERS** the following:

The Motion to Alter or Amend Judgment (Docket Entry No. 73) is **DENIED**.

**SIGNED** on this 8th day of May, 2008.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE